IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | 4:22-CR-00297-2 SRC |
| LEWIS REED, | ) ) ) |  |
| Defendant. | ) |  |

**<u>DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION</u>**

COMES NOW Defendant, Lewis Reed, through his appointed attorney, Nicole M. Johnston, and hereby replies to the United States' Response to Defendant's Motion for Sentence Reduction. Doc. 175.

In its Response, the United States admits that the Defendant is eligible for a sentence reduction if: "(1) a retroactive amendment would lower the Defendant's original guideline range, and (2) the Defendant did not previously receive a sentence at or below the bottom of the amended range (except for substantial assistance)." Doc. 175 at 3. The Defendant's sentence on December 6, 2022, meets these criteria. Doc. 166 at 2.

The Government claims a reduction is not warranted under Section 3553(a) because "[T]he Defendant's offense conduct was egregious, involving a significant breach of public trust, and a lesser sentence would undermine the goal of general deterrence for other public officials" Doc. 175 at 1. However, 18 U.S.C. § 3553 (a)(6), also allows for a reduction,

1

"for the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…"

The Response further justifies a reduction in the Defendant's sentence, "Specifically, the court must . . . weigh public-safety concerns and may consider relevant post-sentencing conduct," good or bad. *United States v. Darden,* 910 F.3d 1064, 1067 (8th Cir. 2018) (citing U.S.S.G. § 1B1.10 cmt. n.1(B)) Doc. 175 at 4. The Defendant's post-sentencing conduct is untarnished, and the Government has yet to argue that the Defendant is a threat to the community.

The Eighth Circuit cases cited by the Government on page 5 of its Response are not analogous to the facts of Defendant's case. The Eighth Circuit was justified in its findings in the listed cases. For example, in *United States v. Granados,* 830 F.3d 840 (8th Cir. 2016)*,* the Defendant had a significant criminal history and used firearms during the commission of his crime and did not have a recidivism score of less than zero. In *Granados,* "The court nonetheless concluded that it is ... clear that Granados is not one of the nonviolent offenders contemplated by the Sentencing Commission when it approved the Amendment. He is not one of the people the Department of Justice had in mind when supporting the Amendment's retroactivity…The court determined that afford[ing] Granados relief would be inconsistent with the policy statements of the Sentencing Commission as well as the sentencing factors enumerated by Congress. The nature and circumstances of this case and public safety considerations preclude this court from granting a sentence reduction." *Id*. The pre-sentencing behavior, criminal history, post-sentencing behavior, violence during offense, prison conduct and community safety make

these cases immaterial given the vast differences in Defendant's pre and post sentencing behavior, case facts, lack of criminal history, lack of history of violence, and lack of violence in the instant case.

In addition to the above reasons, Defendant's PATTERN score, which measures federal prisoners for their risk of recidivism or re-offending, started at -1 and has now decreased to a -4. The Defendant has been a model inmate, volunteering to teach math and tutoring other inmates for their G.E.D., volunteering in the kitchen and administrative offices, counseling other inmates on how to obtain legal employment leading to careers, and enrolling in as many educational opportunities the institution has available. This model behavior has caused a steady decrease in Defendant's PATTERN score which now stands at -4. Defendant is now considered to have less than zero (0) risk of re-offending. Attempts to link Defendant to "accomplices" fails to consider Defendant's crime and subsequent conduct independently.

The Response references Defendant's position as President of the Board of Alderman and his respective position on the "All Powerful Board of Estimate and Apportionment" in a seeming attempt to link this position to longtime nefarious activities. Doc. 175 at 6. The Defendant's public service career lasted over twenty years with an unblemished record. Ostensibly, the Government's attempts to argue Defendant's criminal conduct extends into the early years of his career is simply conjecture.

The Defendant requested a reduction in his sentence because the law has changed. Moreover, this change mandates that the revised sentencing guidelines be made retroactive. See 18 U.S.C. § 3582(c) and policy statement § 1B1.10. Defendant qualifies for

this reduction. As noted in Defendant's Amended Motion filed on February 2, 2024, had these guidelines been in place on December 6, 2022, the sentencing range would have been 30-37 months, not 37-46 months. Doc. 172 at 3. The Government opposes the Defendant's motion by asking this Court to impose a sentence above the current guidelines. At sentencing, the Government did not request this Court impose a sentence above the guidelines.

The Government contends maintaining the status quo will keep not only this Defendant but individuals in similar positions of public service from engaging in criminal corruption. Doc. 175 at 6. However, any future public servant charged with the same crime would be sentenced to the new guidelines, not the previous guidelines used to sentence the Defendant. The Government's Response asks this Court to apply the law differently to similarly situated defendants.

The Government also asks this Court to consider losses that were never sustained nor contemplated by this Court. Doc. 175 at 7. The United States asks this Court to look at losses that *could have happened* to the residents of the City of St. Louis in excess of $1,000,000. *Id*. These losses never occurred. If the Court extrapolates this logic, loss amounts for fraudulent matters would be incalculable since the Court would need to consider the other possible frauds the offender may have perpetrated on others had he been left unindicted. Instead, this Court determined that restitution was not applicable and could be recouped in the form of a fine. See Statement of Reasons, Doc. 166-2 at 3.

The Government claims the Defendant's scheme cost the City of St. Louis, particularly the St. Louis Public School System, lost funding. Before any tax abatement

4

can be considered by the BOA, it must be approved though a lengthy process by multiple independent agencies such as the St. Louis Development Corporation (SLDC). First, the SLDC Board of Directors reviews and approves any application. That approved application is then forwarded to Land Clearance and Redevelopment Agency (L.C.R.A.). Before the LCRA will approve a project, it goes through a public hearing. After this process is completed, the SLDC and LCRA draft a board bill and the alderman from that ward carries the bill through the legislative process. Ordinances, other than one for a tax abatement, go through a similar process and eventually ALL approved bills are signed by the President of the Board of Alderman and the mayor.

When the Board President is working to pass a bill, they perform certain actions to assure the passage of the bill including writing letters of support to government agencies, lobbying the other board of alderman members, requesting a hearing from the committee chairman, contacting committee members asking for their support of the bill, attending committee hearing, speaking on behalf of the bill, voting for it in committee, and reaching out to neighborhood organizations to gain support for a bill. Defendant did not perform any of these actions for the tax abatement referenced in the Government's Response on page 7.

Currently, residents of the City of St. Louis are reaping the benefits of Defendant's work for the city as evidenced by the recent Rams settlement, including billions in new economic development activity resulting in jobs allowing many families the ability to lift themselves out of poverty; established the Washington Ave loft and entertainment district bringing loft living to downtown St. Louis; led the Board to adopt the measure which set

5

the stage for St. Louis Soccer stadium and franchise; led the re-accreditation of the St. Louis City public school system; led the Board of Aldermen amidst protest to place a proposal before the NFL which gave St. Louis standing in court resulting in nearly a billion dollar settlement for the region and even more restitution for PSL owners; worked with local and federal partners to keep the National Geo Spatial Agency (NGA) in St. Louis and utilizing its footprint to set the stage for greater economic future for families who reside in North St Louis, small businesses, and residential development; lined up votes to deliver the Affordable Housing Trust Fund to provide millions annually to families for rental, mortgage, utility and tutoring support; passed laws requiring government transparency to allow city residents access to meetings and budget hearings; and brought Nextdoor to every neighborhood throughout St. Louis to amplify citizen's voices to encourage more government accountability. City residents are still benefiting from Defendant's work today.

  The Defendant was charged with serious crimes for which he is currently being punished. The seriousness of Defendant's crime isn't lost on Defendant nor counsel. The Defendant not only has lost a career in public service he spent over twenty years making, but he also lost a significant portion of his pension, his reputation has been forever tainted and his family has been financially devastated. By the time he completes his sentence, he will be over 62 years of age requiring him to work well beyond retirement years to keep pace with basic living expenses in retirement. To say that this has been a life altering event in the Defendant's life would be an understatement.

WHEREFORE, Defendant reaffirms his request for a sentence reduction under Amendment 821. It is respectfully requested that the Court enter an amended Judgment reducing Defendant's sentence to 30 months imprisonment or to a sentence lower than 45 months but within the new range of 30-37 months.

Respectfully submitted,

*/s/ Nicole M. Johnston*
Nicole M. Johnston, #68749MO
P.O. Box 440143
St. Louis, Missouri 63144
(314) 440-2548
nicolejohnston5@gmail.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Office of the United States Attorney.